ROBERT MOORING v. THE STATE.

No. 6309.    Decided October 5, 1921.

**Aggravated Assault—Requested Charge—Violence to the Person—Rule Stated.**

Where, upon trial of assault to rape, defendant was convicted of an aggravated assault, and the evidence showed that defendant used violence upon the person of the alleged female, although it did not amount to an attempt to commit rape, there was no error in refusing the requested charge which would have been applicable in a case of assault with intent to rape, and the conviction was sustained. Following Sheilds v. State, 39 Texas Crim. Rep., 418, and other cases.

90 T. C.—9

Appeal from the Criminal District Court of Harris. Tried below before the Honorable C. W. Robinson.

Appeal from a conviction of aggravated assault; penalty, six months. confinement in the county jail.

The opinion states the case.

*Garrison, Pollard, Morris & Berry,* and *S. B. Ehrenwerth,* for appellant.—Cited Doss v. State, 28 Texas Crim. App., 510; Bonner v. State, 59 Texas Crim. Rep., 350; Schenk v. State, 174 S. W. Rep., 357.

*R. H. Hamilton,* Assistant Attorney General, for the State.

MORROW, PRESIDING JUDGE.—The appellant is under conviction for aggravated assault; punishment fixed at confinement in the county jail for six months.

The appellant was acquitted of the major offense of which he was. charged, and we deem it unnecessary to recite the facts save such as. reflect appellant's defensive theory, which he insists should have been submitted to the jury in the following special charge:

"If you believe from the evidence in this case that the defendant,. Mooring, on account of the previous conduct of the prosecutrix, had reason to believe and did believe that he could have carnal intercourse with her without force, and that in pursuance of such belief he proposed or undertook to have same, and that she resisted and undertook to leave the car and what he did to her, if anything, was to use sufficient force to keep her from leaving the car under the circumstances and that he did not intend to have carnal intercourse with her without her consent, and by the use of such force as required in the Court's main charge, or if you have a reasonable doubt as to such facts, then you will acquit the defendant and say by your verdict herein, 'not guilty.' "

From appellant's testimony, it would appear that his acquaintance with the prosecutrix, Beulah Theall, began about three days before the date of the alleged offense; that the meeting occurred upon the street. in Houston; that she gave him her first name and the telephone number; that he later called her over the telephone and made an engagement to take her riding; that he and a companion went at night to her home, and two other young ladies and two men went with the appellant riding in a Ford sedan car, one of the girls sitting in the lap of one of the men, and that the parties were quite familiar in their relations, though nothing criminal or bordering thereon was done; that on the night of the alleged offense, appellant made an engagement to meet the prosecutrix at a public dancing place; that they met and danced; and later she and her girl companion; appellant and his male companion, by agreement, took a ride in the automobile, going to a point

about eight miles from the city, which was about the same place that they had gone on the former occasion mentioned.

Appellant testified that during the ride, he sat in the back seat with the prosecutrix and she submitted, without protest, to familiarities such as playing with her breast and legs; that they stopped the car near a bridge and his companion began "loving-up" the other girl who was in the seat with him and she hollered. From his testimony, we quote:

"When she did, Miss Theall tried to participate in the argument and raised up to help; when she did, I pulled her back in the car trying to keep her out of the argument. I didn't notice her hollering over once or twice, 'let me help her,' so a farmer hollered and Mr. Cox let Miss Crenshaw aloose, she jumped out of the car and Miss Theall began to holler 'let me go, don't leave me.' I told her, well, get Miss Crenshaw back in the car and we will come back to town. She didn't say yes or no; I turned her aloose, she run out there where Miss Crenshaw and the gentleman was and that is the last time I have seen Miss Theall until yesterday, when I saw her up here. I had no intention about raping her at that time. I did not have any intention to have carnal intercourse with her without her consent. I did not choke her. I heard her statement here that I tried to raise her dress and she held it down; I did not do that. I was wallowing all over her all the way out there. When the car stopped I was not on top of her unless it was when I pulled her back when she was interfering with Mr. Cox. I did not have a bit of idea that she would object to my intention there in the way of intercourse."

It appeared from the state's testimony, in a general way, that when the car stopped the appellant undertook to have intercourse with the prosecutrix and that she screamed and that the other girl, who was in like position, screamed and their cries attracted the attention of a farmer who lived some thousand yards from the car in which the assault was charged to have been made; that he went to the car, taking his gun along, and upon approaching, both girls came to him excited and crying; that they remained at his house during the night, appellant and his companion returning to the city in the car.

Without controverting the proposition that in a proper case, one who engages in familiarity towards a female may defend upon the ground that his conduct was induced by her previous behavior and that when the facts justify, the court is not warranted in refusing to present such defensive theory in an affirmative manner to the jury, (Shields v. State, 39 Texas Crim. Rep., 14), we are of the opinion that in the instant case, violence was not done to this principle in refusing the requested charge. We conceive the charge to be applicable to the defense of an assault with intent to rape and not addressed to the phase of the case involving an assault with no intent to rape.

The charge also directs, in effect, an acquittal if all that the appellant did was done without an intent to have carnal knowledge without the consent of the prosecutrix.

Another special charge presenting this phase of the case in different language was given, and responding to that and to the general charge, there was an acquittal of an assault with intent to rape, which implies the finding of the jury that the appellant acted with no intent to force submission to his desire to have carnal knowledge with the prosecutrix; that he had no such intent does not imply that his conduct was lawful. His conduct, by the prosecutrix, is described thus:

"When the car stopped they turned the lights out and Mooring grabbed me and got on top of me and tried to raise up my dress, and I held on to my dress and I hollered and screamed, and tried to beg him, and told him that we wasn't that kind of girls, to please let us go,—we had trusted to come with him that far, didn't want to come, and wanted to go home, and he said there wasn't any use to holler, we had to give it up, that is all. He continued that until Mr. Ulrich came to us. At the time Mr. Ulrich came I was hollering for help, and Mooring was trying to raise my dress. . . . From the time he took hold of me, up to the time Mr. Ulrich came, I just tried to push him off, hold on to my dress, and holler. I hollered all the time until Mr. Ulrich came. Mooring put his hand to my throat and tried to make me shut up two or three times; I certainly did holler as loud as I could. Mooring had his hand to my throat. . . . When Mr. Ulrich came up there he hollered to 'leave those girls alone,' and they let us go. . . . When I got out of the car I went to him, but the other girl was over there before I was. The reason she got to him quicker than I did is because Mooring did not turn me aloose as quick as Cox turned her aloose."

Pretermitting her testimony and adverting alone to the testimony of the appellant wherein he admits that induced by the belief that the prosecutrix would not object to carnal intercourse with him, he undertook to accomplish it and after she screamed and her companion screamed with sufficient force to attract the attention of the witness who was a thousand yards distant and cause him to come to the rescue, he persisted in using force sufficient, in his judgment, to prevent her from leaving the car, we are unable to sanction the view that the trial court was in error in declining to instruct the jury that even though there was no intent to force carnal intercourse, an absolute acquittal must result. Upon the conceded facts, it occurs to us that, under the circumstances, the force used in restraining the prosecutrix in her efforts to quit the car was itself sufficient to justify the trial judge in refusing to submit to the jury the special charge in question. Wharton's crim. Law, Vol. 2, Sec. 798; Fuller v. State, 44 Texas Crim. Rep., 464.

The judgment is affirmed.

*Affirmed.*